# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0466
Filed May 27, 2026

————————————

**In the Interest of R.B., M.B., E.B., and L.B., Minor Children,**

**A.B., Father,**
Appellant.

————————————

Appeal from the Iowa District Court for Wapello County,
The Honorable Richelle Mahaffey, Judge.

————————————

**AFFIRMED**

————————————

Michael S. Fisher of Fisher Law Office, Pella, attorney for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Samuel K. Earhart, Ottumwa, attorney and guardian
ad litem for minor children.

————————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Schumacher, P.J.

**SCHUMACHER, Presiding Judge.**

A father appeals the termination of his parental rights to his children,[1] R.B. (born 2019), M.B. (born 2020), E.B. (born 2021), and L.B. (born 2023), challenging the sufficiency of the evidence supporting the grounds for termination. The father also claims termination is not in the children's best interests, additional time for reunification efforts should be granted, and a permissive exception under Iowa Code section 232.116(3)(a) (2026) should be applied to preclude termination. Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

This family came to the attention of the Iowa Department of Health and Human Services in the summer of 2024, upon reports of the father strangling the mother.[2] A founded child abuse assessment was issued, and a no-contact order was established against the father. The family agreed to participate in a safety plan under which the mother would follow the protective order and not allow the father to be at the family home. There were also concerns about the father's alcohol use and inappropriate sexual behavior around the children. The parents did not comply with the safety plan and failed to meet with caseworkers.

An ex parte removal order was issued in October, after the mother absconded to South Dakota with the children. The department coordinated with the maternal grandparents to pick up the children, and the children were then placed with the maternal grandparents upon their return to Iowa.

---

[1] The mother's parental rights were not terminated.

[2] The father pled guilty to domestic abuse assault and was sentenced to serve two years of probation. He has a lengthy criminal history.

The children were adjudicated in need of assistance. The mother participated in all recommended services. The parents separated in May 2025. The children were formally returned to the mother's custody several months later, where they have remained.

The father's participation in services was inconsistent. After the children's removal in October 2024, the father was scheduled to have one fully-supervised visit per week. However, the father reported that he was moving out of state, so visits did not begin. In February 2025, the department caseworker met with the father and instructed him to contact the family services provider to schedule visits. Thereafter, the father's visitation plan "was terminated due to no contact." The department later learned that the father had unauthorized contact with the children during that time.

In April, the visitation plan was put back into place, and a visit for the father was scheduled in May. The visit did not occur because the father was arrested.[3] While in jail, the father participated in video visits with the children. But after these visits, concerns arose that the children "had started to act out more physically, more aggressive[ly] with each other than what they normally had." In August, the court suspended the visits "due to the emotional and mental harm from the interactions."

The department caseworker met with the father while he was in jail, and he appeared willing to participate in services. Upon his release in September, the father completed substance-use treatment. He did not reengage in mental-health services, although he reported that he planned to do so. The department caseworker expressed concern about the father's lack

---

[3] The father pled guilty to violating the no-contact order. A stalking charge against him was dismissed. The father maintained the charges against him were "false."

of participation in mental-health services during this case "due to the perpetration of domestic violence" and his history of "aggression and anger," which she opined "needed to be addressed in those evaluations and therapy."

In January 2026, the State petitioned to terminate the father's parental rights. The termination hearing took place in February. The department and guardian ad litem recommended that the children remain in the mother's custody and the father's parental rights be terminated. The mother agreed with the recommendation that the father's rights be terminated.

The children last had contact with the father six months prior, in August 2025. The caseworker reported that since the children's contact with the father was suspended, "[t]heir behaviors have improved." She believed that "resuming contact between [the father] and the children would be detrimental to them." The children's mental-health providers opined the same. A no-contact order was in place with R.B. as the protected party, but the father was allowed to have contact with the mother to communicate about the children. Given the father's history and lack of participation in services, the caseworker did not believe that the order "on its own is enough to be protective of these children."

The father acknowledged that he had a "lack of participation" in mental-health services, but he stated that he had recently "filled out paperwork" to reengage in treatment. He testified his last use of alcohol was in May 2025, when he got arrested. He agreed he had domestically abused the mother, which likely "negatively affected" the children. He maintained that he wanted to correct the situation but was not given an opportunity to do so. He acknowledged, "I let them down more than anything, failed them

4

as a father." He requested the court enter a bridge order or grant him a six-month extension to continue to work toward reunification.

The court declined the father's requests and entered an order terminating his parental rights to R.B., M.B., and E.B. under Iowa Code section 232.116(1)(b), (e), (f), and (i) and to L.B. under section 232.116(1)(b), (e), (h), and (i). The father appeals.

## STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our primary consideration is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). The defining elements of our best interests' analysis are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## ANALYSIS

In general, when reviewing termination-of-parental-rights cases, we follow a three-step analysis, asking whether (1) a statutory ground for termination is satisfied, (2) the children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3).

### I.      Statutory Grounds for Termination

When the "court terminates parental rights on more than one statutory ground, we may affirm the [court's] order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, we narrow our review to the common fourth element of Iowa Code

section 232.116(1)(h) and (f),[4] the only element of these grounds the father challenges on appeal—whether or not the children could be returned to his custody at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" as "at the time of the termination hearing").

On this question, we concur with the father's concession in his petition on appeal that the children's placement with him "at the time of the hearing was not feasible." The children had been removed from the father's custody since October 2024. Since that time, the only "consistent contact" the father had with the children was during summer 2025, when he was incarcerated. That contact consisted of four, fifteen-minute virtual visits. In addition, the father had not addressed the concerns leading to the children's removal. *In re S.C.*, No. 23-0489, 2023 WL 5092889, at *2 (Iowa Ct. App. Aug. 9, 2023) (noting the father's "uncontrollable anger and mental-health concerns remain unresolved with the father showing no insight into how those behaviors impacted the children" and prevented the court from finding the children could be returned to his custody). The children could not be returned to the father's custody at the time of the termination hearing. The State proved the grounds for termination under section 232.116(1)(h) and (f) for the respective children.

## II. Best Interests

The father next claims that termination is not in the children's best interests. To determine best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and

---

[4] The two sections are largely similar, but section 232.116(1)(h) applies to children three years of age or younger and 232.116(1)(f) to children four years of age or older.

emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). To that end, the father maintains that "the long-term nurturing and growth of the children would best be accomplished with him still in their lives, whatever that role ma[y] look like."

The caseworker succinctly testified why termination was in the children's best interests:

> Due to [the father]'s lack of involvement and accountability to ensure that the safety concerns that have brought the Department into their lives have not been effectively addressed as well as the perpetration of domestic violence. The children have witnessed quite a few incidences, and unfortunately that has caused them to have behaviors, act aggressively towards each other, and cause mental concerns—mental-health concerns.

This assessment is supported by the record. Termination of the father's parental rights is in the children's best interests.

## III.  Extension of Time for Reunification Efforts

As part of his best interests argument, the father makes a passing reference to a request for additional time. We elect to address this issue separately and treat such as a request for additional time under Iowa Code section 232.104(2)(b).

Under Iowa Code section 232.104(2)(b), the court can grant an additional six months for a parent to work toward reunification. However, the court must detail "specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child′s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(b). The children have been removed since October 2024. This court, like the district court, is unable to detail "factors, conditions, or expected behavioral changes" as a

basis to conclude that reunification with the father would be possible after an additional six months.

And we must also consider whether additional time is in the children's best interests. *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Further delay is not in the best interest of these children.

## IV. Permissive Exception to Termination

The father also claims a permissive exception exists because the mother has custody of the children. *See* Iowa Code § 232.116(3)(a). Specifically, he argues that "[a]lthough the likelihood of the mother allowing the father to see the children would be dubious at best given their contentious history, it is a less-restrictive alternative than termination of the father's parental rights." The State counters the father's claim, pointing out that "[i]n this case, the relative in question is the mother, who is the victim of much of the father's domestic violence which has been observed by the children."

On the issue of permanency options, the court found:

> Given the children's young ages, the history of domestic violence, violations of the [no-contact order], and alcohol abuse, enough safety concerns exist that the Court does not find the children can be appropriately and permanently protected by another permanency outcome such as a custodial order. In short, these children cannot be adequately protected by any permanency option that does not include termination of parental rights.

The department caseworker similarly opined that "only termination [of the father's parental rights] would be protective enough to ensure the kids' safety in [the mother's] care."

Upon our review, we conclude the evidence here weighs in favor of termination, not a permissive exception. The exception under section 232.116(3)(a) "is not automatically applied when the child is in the care of the other parent." *In re of K.I.*, No. 25-2056, 2026 WL 1020921, at *4 (Iowa Ct. App. Apr. 15, 2026). Under these circumstances, the father has not met his burden to prove the exception under section 232.116(3)(a) should be applied. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting the parent seeking to avoid termination under section 232.116(3) bears the burden of proof).

We affirm the termination of the father's parental rights.

**AFFIRMED.**